1
2
3
4
5
6
7    IN THE UNITED STATES DISTRICT COURT
8    FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   TOMMIE LEE JACKSON, AK2465,     )
                                     )
11          Petitioner,              )      No. C 13-4883 CRB (PR)
                                     )
12   vs.                             )      ORDER DENYING PETITION
                                     )      FOR A WRIT OF HABEAS
13   P.D. BRAZELTON, Warden,         )      CORPUS
                                     )
14          Respondent.              )
     ————————————————————           )
15
16          Petitioner, a state prisoner at La Palma Correctional Center in Eloy,

17   Arizona, seeks a writ of habeas corpus under 28 U.S.C § 2254 challenging a

18   conviction from Contra Costa County Superior Court on the ground that the trial

19   court improperly restricted his cross-examination of the prosecution's primary

20   witness, Jane Doe.  For the reasons that follow, the petition will be denied.

21                            **STATEMENT OF THE CASE**

22          On September 28, 2011, petitioner was convicted by a jury of six counts

23   of lewd and lascivious acts upon a 14 to 15 year-old-child with a 10-year age

24   difference, Cal. Penal Code § 288(a), (c)(1). The trial court sentenced petitioner

25   to state prison for 14 years and 8 months.

26          On April 30, 2013, the California Court of Appeal affirmed the judgment

27   in an unpublished decision.

28          On July 10, 2013, the California Supreme Court denied review.

On October 22, 2013, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this court raising eight claims for relief.  On December 17, 2013, the court found the claims cognizable under § 2254 and ordered respondent to show cause why the writ should not be granted.

On February 6, 2014, respondent moved to dismiss the petition on the grounds that petitioner had exhausted only one of his claims.  On April 21, 2014, the court granted the motion to dismiss and asked petitioner whether he wished to return to state court to exhaust all of his claims or to proceed only on his one exhausted claim – that the trial court improperly restricted his cross-examination of the prosecution's primary witness.  Petitioner elected to proceed on his one exhausted claim.

On May 28, 2014, the court ordered respondent to show cause why a writ of habeas corpus should not be granted as to petitioner's one exhausted claim.

On July 16, 2014, respondent filed an answer to the order to show cause, and on August 25, 2014, petitioner filed a traverse.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the relevant facts of the case as follows:

> The victim, Jane Doe, testified at trial as a prosecution witness. Her direct testimony began on September 22, 2011, and was as follows: In 2009, when she was age 15, she and defendant, then age 42, had what appeared to be a consensual dating relationship. They would often sleep together and have sex "maybe a couple times a week." Doe testified she still cared for defendant and it was hard for her to testify.

> Defendant, who represented himself throughout trial proceedings, began his cross-examination of Doe on the afternoon of September 22, 2011. At 4:30 p.m., defendant informed the court he still had "quite a few questions" left, so the court declared a recess and ordered Doe back at 9:00 a.m. Monday morning, September 26, 2011.

> Doe did not appear on the 26th. According to the district attorney's investigator, who had gone to pick up Doe but could only contact her by phone, Doe said she was overwhelmed and could not take it. A warrant

2

issued for Doe's arrest. Doe was brought to court pursuant to the warrant the following day, September 27, 2011, and cross-examination continued. The district attorney conducted a re-direct examination, and defendant followed with a re-cross examination that continued after the lunch break. On concluding, defendant requested Doe be subject to recall. In all, defendant's questioning of Doe spanned three sessions and approximately 44 reporter's transcript pages.

Toward the end of the day, defendant began presenting his case-in-chief. After the jury was excused for the evening, he informed the trial court he wanted to recall Doe. When asked why, he told the court he wanted to question Doe further about her demeanor. The trial court asked defendant if Doe had not already testified about her demeanor, and defendant responded there were other questions he had:

MR. JACKSON: That was one question. There was a couple of more other questions I want to ask.

THE COURT: All right. What were those?

MR. JACKSON: Oh, what were those?

THE COURT: Yes.

MR. JACKSON: It was about has she been coerced in changing her testimony. Have anybody–

THE COURT: She didn't change her testimony.

MR. JACKSON: She changed it twice. She had one statement last week, and then she had another statement this week. It was two different statements. That's why I was impeaching her on her statement. And if anybody–

THE COURT: Let's stop there. What's the difference in her testimony from last week to this week?

MR. JACKSON: Well, couple of questions I didn't ask, has she been coerced to changer her testimony, did anybody threaten her to change her testimony, or coerce her into saying things she didn't want to say, or is anyone paid her–

THE COURT: Why didn't you ask her that today?

MR. JACKSON: Because I was adding everything up. That's why I asked to recall her to see some things. And when I saw her demeanor and telling her thanks a lot for nothing, or something like that, I wanted to ask. And that's when it came to me after I was adding things up. That's why I want to address that.

THE COURT: I still don't know why you didn't ask her that when you had her here. It's a big deal to get her here.

3

MR. JACKSON: Because, at the time, when I saw that, that's when it rung to me, and I was looking at her, and I'm wondering where she got money from to get her hair done and nails. Things like that. If anybody offered her gifts to change her testimony, which I'm entitled to do when discovering what California Supreme Court states, and that's what I was going to ask her about. I was seeing some things.

THE COURT: But you saw her today. You knew she was upset for having to come back, and I have not heard a reason yet why you didn't ask her those things already. You can't just keep bringing a witness back and back and back, as you think of more things that you want to say. . . .

¶ . . . ¶

MR. JACKSON: She was walking off the stand. And when I heard that statement and saw the demeanor, that's when I said, well, I should ask her these questions. Then I see her nails and stuff. I couldn't see them back there or anything. When she waved, that's when I said, well, I got to ask her these questions, where she got the money from, did anybody offer her gifts to change her testimony or anything. And California Supreme Court states I have a right to ask that.

The prosecuting attorney argued defendant had a full chance to question Doe and had offered no credible reason why he could not have asked his questions about coercion or bribery during his several cross-examinations. She also argued defendant's request was, under Marsy's Law, unduly harassing of a sex crime victim. She proffered she had made "no promises whatsoever" to encourage Doe's testimony. This was not enough for defendant who told the court he would "rather hear it from [Doe] on the record."

The trial court then ruled on defendant's recall request from the bench:

THE COURT: All right. Given the proffer that you have given and that the People have not promised her anything – I know they wouldn't have, you don't do that – and given that the witness herself has felt that your questioning was harassing, and she was very upset after having to come back and spend another day, the Court is going to rule that Marcy's Law does preclude her from having to come back to face these questions. I think they're very marginally relevant.

MR. JACKSON: Okay.

THE COURT: It doesn't take any money to comb your hair or to put nail polish on. I don't see how she could have received any benefit. I've already recalled the warrant. And she was very upset. And you don't have any means of getting her here. [¶] So I – I

requested – excuse me – I've requested the DA to help you many times, but, hum, this is going overboard. And I – I agree, that under Marcy's Law and under your proffer, when you said you didn't forget, that you don't have good cause to recall her.

On September 28, 2011, the jury, after deliberating less than an hour-and-a-half, found defendant guilty of all six counts of the information. The court, in a bifurcated proceeding that same date, found defendant had suffered the previous convictions alleged in the information.

The trial court subsequently sentenced defendant to a prison term of 14 years eight months. The court applied a number of sentence enhancements, but ultimately chose to strike one of defendant's prior serious felony convictions and so did not impose the 25-years-to-life term the people had requested under the three strikes law.

People v. Jackson, No. A133779, slip op. at 2-4 (Cal. Ct. App. Apr. 30, 2013)

(Dkt. #7 Ex. A).

### STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529

5

U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

## DISCUSSION

Petitioner claims that the trial court violated his right to confrontation by not allowing him to recall and further cross-examine Jane Doe. According to petitioner, such cross-examination was necessary for impeachment and discovery of possible witness bias.  The claim is without merit.

A.    State Court Opinion

The California Court of Appeal rejected petitioner's claim, as follows:

6

Defendant contends the trial court should have allowed him to recall Jane Doe for further cross-examination and that its failure to do so violated his rights to a fair trial and to confront witnesses testifying against him.

" ' "[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, . . . to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law" [Citation.]' [Citation.]" (People v. Ardoin (2011) 196 Cal.App.4th 102, 118 (Ardoin).) The "right of confrontation is not absolute, however [citations], 'and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " (Alvarado v. Superior Court (2000) 23 Cal.4th 1121, 1138-1139.) "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (Delaware v. Van Arsdall (1986) 475 U.S. 673, 679.) The limit on the right can also be stated this way: an accused is guaranteed " 'only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ' " (People v. Gonzalez (2012) 54 Cal.4th. 1234, 1265.)

Under California's Evidence Code, "[a]fter a witness had been excused from giving further testimony in the action, he cannot be recalled without leave of the court. Leave may be granted or withheld in the court's discretion." (Evid. Code, § 778.) In a similar vein, "[a] witness once examined cannot be reexamined as to the same matter without leave of the court, but he may be reexamined as to any new matter upon which he has been examined by another party to the action." (Evid. Code, § 774.) A trial court's denial of recall is reviewed for abuse of discretion. (People v. Thomas (1992) 2 Cal.4th 489, 542; People v. Cooks (1983) 141 Ca.App.3d 224, 327; People v. Burton (1961) 55 Cal.2d 328, 344, abrogated on other grounds by People v. Brown (1994) 8 Cal.4th 746 [refusal to allow further cross-examination during defendant's case in chief was within the trial judge's sound discretion].)

Trial courts do not violate a defendant's confrontation right by routine application of such " ' "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" ' "; rather an accused must exercise his right while complying with these rules. (Ardoin, *supra*, 196 Cal.App.4th at p. 118; cf. People v. Quartermain (1997) 16 Cal.4th 600, 623 ["notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352"].)

We conclude the trial court here did not abuse its discretion under the Evidence Code in denying defendant further cross-examination of Doe, and we further conclude there was no constitutional violation as defendant was afforded a full opportunity to question Doe.

First, defendant questioned Doe at length.  He witnessed first-hand

whatever alleged change in testimony he claimed to have perceived and had ample opportunity to observe Doe's physical appearance and demeanor. He had three separate sessions questioning Doe. There was a four-day gap between the first two sessions and an hour-and-forty-minute lunch break between the second and third sessions. The trial court did not have to allow defendant a fourth session with Doe simply because defendant articulated supposedly "new" questions he could have asked earlier but did not. There would otherwise be no coherent limiting principle to keep a trial from continuing indefinitely. (See <u>People v. Marshall</u> (1996) 13 Cal.4th 799, 836 [on a defense motion to reopen, trial court may consider defendant's diligence and opportunities]; <u>People v. Cooks</u>, *supra*, 141 Cal.App.3d at p. 327 [defendant had ample time for questioning].)

Second, defendant did in fact question Doe about alleged changes in her testimony, hammering home in repeated questions that Doe had told one story to police (defendant did not know her age and resisted sex) but had testified in court to another story (that defendant knew her age from the beginning and engaged in sex willingly). Defendant even conceded on the record he "was impeaching her on her statement." Defendant has never identified or suggested how he would elucidate any other supposed change in Doe's testimony.

Finally, the trial court did not need to credit defendant's rank speculation that Doe's combed hair, painted nails, and "thanks for nothing" remark to the prosecuting attorney suggested the prosecution had procured her testimony with gifts. Such speculation is not tantamount to an offer of proof sufficient to justify recalling a witness. (<u>People v. Mehserle</u> (2012) 206 Cal.App.4th 1125, 1154 ["there was an element of speculation in the defense offer of proof"]; <u>People v. Foss</u> (2007) 155 Cal.App.4th 113, 127 – 128 [speculation and lack of specificity was inadequate to preserve the issue for consideration on appeal]; <u>People v. Conrad</u> (2006) 145 Cal.App.4th 1175, 1184 ["speculation insufficient to support claim of evidence loss"]; <u>People v. Eid</u> (1994) 31 Cal.App.4th 114, 126 – 127 [insufficient offer of proof when "based on nothing more than optimistic expectation"]; cf. <u>People v. Raven</u> (1955) 44 Cal.2d 523, 525 – 526 [sufficient offer of proof made to allow determination that trial court prejudicially erred in exercising discretion not to recall witness].) Defendant's speculation was particularly unconvincing given the arrest warrant required for Doe's presence. Indeed, that and Doe's scornful remark to the prosecuting attorney tended to show something quite different – that Doe did not wish to be in court or have any interactions with the prosecution. (See <u>Marshall</u>, *supra*, 13 Cal.4th at p. 836 [on motion to reopen, court considers "significance of the [new] evidence"].)

In sum, defendant had ample opportunity to question Doe and the court acted well within its discretion in denying to recall Doe for further cross-examination.

<u>People v Jackson</u>, No. A133779, slip op at 5-7 (Cal. Ct. App. Apr. 30, 2013) (Dkt. #7 Ex. A)

8

B.    Federal Law

The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish.  Delaware v. Fensterer, 474 U.S. 15, 20 (1985).  Trial judges retain wide latitude to impose reasonable limits on cross-examinations based on concerns about, among other things, "harassment, prejudice, confusion, of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  A defendant establishes a violation of the Confrontation Clause if "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility had [he] been permitted to pursue his proposed line of cross-examination." Id. at 680.

To determine whether a violation of the Confrontation Clause occurred under Van Arsdall, courts evaluate three factors: (1) whether the evidence was relevant; (2) whether there were legitimate interests that outweigh the defendant's interests in presenting the evidence; and (3) whether the exclusion of the evidence left the jury with sufficient information to assess the credibility of the witness. Wood v. Alaska, 957 F.2d 1544, 1549-50 (9th Cir. 1992); Averilla v. Lopez, 862 F. Supp. 2d 987, 998 (N.D. Cal. 2012).

A showing of constitutional error under the Confrontation Clause only merits habeas relief if the error was prejudicial, that is, if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Holley v. Yarborough, 568 F.3d 1091, 1100 (9th Cir. 2009) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

C.    Analysis

The California Court of Appeal's rejection of petitioner's claim was not

9

contrary to, or involved an unreasonable application of, clearly established

Supreme Court precedent.  See 28 U.S.C. § 2254(d).  The state appellate court's

decision was in fact consistent with Van Arsdall.

      The first factor courts use to determine whether a violation of the

Confrontation Clause occurred under Van Arsdall at first glance appears to weigh

in petitioner's favor because petitioner's proposed line of cross-examination

inquiring as to potential coercion by the prosecution and questioning of Doe on

her inconsistent testimony would be relevant to impeach Doe's credibility.  But

petitioner already had been given three separate opportunities to cross-examine on

these issues and in fact, had questioned Doe about alleged changes in her

testimony, reiterating that Doe had told one story to the police but had testified in

court to another story.  Moreover, petitioner did not identify, or even suggest, how

he would elucidate any other supposed changes in Doe's testimony.  And needless

to say, petitioner's basis for the coercion allegation – mere curiosity about how

Doe was able to get her "hair and nails done" – carries little evidentiary weight.

      Turning to the second factor, the state presented legitimate interests that

outweighed petitioner's interests in pursuing the proposed line of cross-

examination.  The court noted that Doe was very upset about having to testify and

already had tried to avoid returning to court, forcing the court to issue a bench

warrant.  Under the circumstances, the court reasonably ruled that Marcy's Law

precluded Doe from having to come back and testify.  Cf. Wood v. Alaska, 957

F.2d 1544, 1551-52 (9th Cir. 1992) (holding that rape shield statute represented

valid legislative determination that rape victims deserve heightened protection

against surprise, harassment and unnecessary invasions of privacy).  The

legitimate interests encompassed in California's Marcy's Law, coupled with the

fact that petitioner had three previous opportunities to cross-examine Doe on

these issues, outweighs any detriment to petitioner caused by the denial of the recall of Doe.

Lastly, the third factor suggests that despite the denial of petitioner's request to recall Doe, the jury was left with sufficient information to assess Doe's credibility. In assessing this final factor, courts often look at several circumstances to determine the potential impact the proposed line of cross-examination might have had upon a jury. See Van Arsdall, 475 U.S. at 684. An important consideration is the overall strength of the prosecution's case and here, in view of Doe's overall testimony along with the testimony of various investigators and officers, "the evidence of guilt was, if not overwhelming, certainly weighty." Merolillo v. Yates, 663 F.3d 444, 456 (9th Cir. 2011). Another important consideration is the importance of the testimony to the prosecution's case. To be sure, Doe's testimony was a primary piece of evidence used by the prosecution. But while proof of coercion may have caused the jury to discredit Doe's testimony, the basis for the questioning was no more than mere speculation – petitioner's curiosity as to how Doe was able to have her "hair and nails done." This is not enough to support a finding that the jury was deprived of critical information to assess Doe's credibility. See id.

In sum, the evaluation of the three factors courts consider in determining whether a Confrontation Clause violation occurred under Van Arsdall do not support a finding that a violation occurred in this case. It simply cannot be said that a reasonable jury would have received a significantly different impression of Doe's credibility had petitioner been permitted to pursue his proposed line of cross-examination. See Van Arsdall, 475 U.S. at 680.[1]

---

[1]Nor can it be said that not permitting petitioner to pursue his proposed line of cross-examination had a "substantial and injurious effect or influence in

Petitioner is not entitled to federal habeas relief on his Confrontation Clause claim because the California Court of Appeal's rejection of the claim was not contrary to, or involved an unreasonable application of, <u>Van Arsdall</u>, or was based on an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d).

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  October 20, 2014

_____
CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.13\Jackson, T.13-4883.denial.wpd

_____

 determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 637.

12